Filed 1/16/26  Greer v. Carlson CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STEVEN GREER, | B343596 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23SMCV02036) |
| v. | |
| TUCKER CARLSON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa K. Sepe-Wiesenfeld, Judge.  Affirmed.

Steven E. Greer, pro. per., for Plaintiff and Appellant.

Dhillon Law Group and Mark P. Meuser for Defendant and Respondent.

_____

Plaintiff and appellant Steven Greer appeals from a judgment of dismissal following an order sustaining a demurrer without leave to amend in favor of defendant and respondent Tucker Carlson in this action arising out of unsolicited ideas for news stories.  The trial court concluded that:  (1) Greer's claims were precluded by prior federal litigation, (2) many of Greer's contract claims were barred by the two-year statute of limitations for implied-in-fact contract, (3) the complaint failed to state a claim for breach of an implied-in-fact contract, and (4) Greer's claim for violation of Business and Professions Code section 17200 depended on his contract claim, so he failed to state a claim under that statute as well.  On appeal, we agree that the complaint fails to state a claim for breach of an implied-in-fact contract, and the claim under Business and Professions Code section 17200 was derivative of the contract claim.  Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

## A.    Lawsuit in Federal Court in New York

On July 14, 2020, Greer, acting *in propria persona*, filed an action in federal court in New York against multiple defendants, including Fox News Media and Tucker Carlson.  Among other causes of action, the complaint alleged claims for unfair competition in violation of California Business and Professions Code section 17200, misappropriation of "hot news," unjust enrichment, and tortious interference with contractual relations.

The federal court dismissed the complaint on jurisdictional grounds because Greer and Carlson were both domiciled in

Florida, but the court granted leave to file an amended complaint.

In March 2021, Greer filed a second amended complaint in federal court against several defendants, including Fox News Media, but omitting Carlson, arising out of the same allegations about the theft of Greer's ideas. The federal court ultimately dismissed the complaint without leave to amend. The court found the Copyright Act preempted Greer's unfair competition claims. The court concluded Greer waived his claim for breach of an implied-in-fact contract by failing to allege it in the complaint, but even if not waived, Greer failed to plead the essential terms of an implied contract. Greer appealed. On March 29, 2023, the federal appellate court affirmed. Among other findings, the appellate court concluded leave to amend to allege an implied-in-fact contract was futile on the merits because Greer failed to allege mutual assent between him and the defendants to compensate or credit Greer for his news tips.

## B. Lawsuit in California

On May 9, 2023, Greer, acting *in propria persona*, filed the instant action against Carlson in California court. The trial court sustained a demurrer filed by Carlson with leave to amend. In February 2024, Greer filed the operative amended complaint against Carlson for breach of implied-in-fact contract and unfair competition in violation of Business and Professions Code section 17200 as follows.

Greer, a Florida resident, is a medical doctor who regularly writes essays and provides expert interviews on healthcare and other topics. He "blasts" emails about his blog essays as idea

3

pitches to an address list that includes members of the media, including Carlson.  In 2017, he added Carlson and Carlson's producers at Fox News to his list of email recipients.

It is the industry standard to pay for ideas.  Greer's emails were standard industry pitches with the expectation of payment if they were used.  Payment by Carlson was implied.  Carlson's show did not create original content, which was fine with Greer as long as credit was given to the original sources, but Carlson was not compensating Greer or providing recognition.  Greer began warning Carlson in 2019 that he expected payment and he has continued to issue notices of violation to the present.

In July 2019, Greer emailed a tip to several individuals, including Carlson and his producer, that Jeffrey Epstein's wealth was derived solely from Les Wexner.  The following Monday, this story was a prominent topic of Carlson's episode, and Carlson interviewed an individual who repeated the text of Greer's tip nearly verbatim.  The following day, Greer sent a text message to Carlson and received as a response, "This is [Fox producer] Chris Wallace.  Please stop sending me right wing propaganda."  Greer believes Carlson wrote the text message himself to cover up using Greer's idea.  On July 29, 2019, Greer sent a "cease and desist" letter to the legal department for Fox News, which was received and read, but Greer received no reply.  Based on these allegations, Greer asserted the existence of an implied-in-fact contract because Greer created the idea, disclosed the idea for sale, use of the idea was "clearly conditioned on the obligation to pay," Carlson used the idea on his show, and the idea had value.

In early 2019, Greer created the term "Demplosion," which he used on his website BatteryPark.TV (BPTV) and in essays. On July 30, 2019, one day after receiving the "cease and desist"

letter, Carlson used the term "Demimplosion" in a graphic. Carlson's monologue mirrored Greer's essays about the Democratic party making mistakes that would cause them to lose badly in the next elections.

Greer promptly posted a story on his website that day with the title, "Tucker Carlson rips off BPTV again," which he sent to his email blast list. Greer received no reply. Carlson used the term again in February 2020.

In April 2020, Greer wrote an essay entitled, "Coronavirus is a New York problem, not a national problem," stating that the mainstream media was clustered in Manhattan, the high death rate was simply generated from hot spots in Queens and other outer boroughs where Third World conditions have existed, and the country was not in a national pandemic worth shutting down the global economy.

On April 24, 2020, Carlson's monologue on his show stated that the virus was concentrated in a small number of places in and around New York City, and it was possibly because these are where most national media figures live that the pandemic often seems like a nationwide disaster.

On May 1, 2020, Greer emailed Carlson and Fox News staff, "Please have your lawyers contact me. You are a serial plagiarist. I am forced to memorialize my innovative content by sending it to you as a copyright notice." Fox News did not respond.

Instead, Carlson used Greer's April 2020 idea again on June 11, 2020, in a story about hospital deaths. Greer sent a "cease and desist" email to Carlson that stated, "I saw your segment tonight with the insider nurse exposing how egregiously incompetent care at Elmhurt Hospital directly led to infections

and death.  You even discussed the concept of medical advocacy by family, which is in my book the Medical Advocate.  [¶]  As you well know, I was the first person months ago to say in the national media and on my own website that the high death rates were due to incompetent care at these hospitals.  I even called the CEO of Elmhurst and spoke with him.  I gave you his contact.  [¶] I'm glad you are covering this.  Unfortunately for you, you have a legal obligation to mention that this was my story.  It is also basic journalistic ethics."

In September 2021, Greer sent an email to Carlson with an exclusive tip about the restriction of oral therapeutics for COVID, including hydroxychloroquine and ivermectin, at large pharmacies in California.  Ten days later, Carlson spoke on his show about this idea.  Greer sent a message to Carlson and Fox News staff with the subject line "Violation," and stated, "Tucker is covering my ivermectin story verbatim tonight.  He even mentioned the same pharmacies that are not dispensing the drug.  His source?  'We are hearing[.]' "

On September 20, 2022, Greer was an invited speaker before the State Board of Education for Ohio about harm caused by gender reassignment surgery.  The complaint alleges Carlson received Greer's email blast with links to that story, which Carlson read.  On September 22, 2022, Carlson began his show with comments very similar to Greer's statements.  Greer sent a notice to Carlson and his attorneys stating, "Tucker Carlson's opening segment last night was lifted straight from my discussion at the Ohio Department of education this week . . . ."

In December 2022, Greer wrote in his "Greer Report" that "The November jobs number of 223,000 seemed to be bogus . . . ." In another post, he wrote, "The White House is putting out

fraudulent jobs numbers. Now, the GDP number seems inflated." Greer sent blast emails to Carlson that included links to Greer's stories.

On December 20, 2022, Carlson began his show by explaining lies from the White House, including the economic jobs report. Greer wrote a violation warning to Carlson and his attorneys that stated, "I was the first person I know of to say that the jobs numbers were cooked. . . . Tucker Carlson tonight [led off his show] with the story about the jobs number being concocted."

In April 2023, Carlson's employment with Fox News terminated and he created a media company named Last Country, Inc.

Greer had an idea that Covid mRNA vaccines were gene therapies that must be removed from the market, which he discussed on his video platform. Greer states that he sent an email about this story to the President of Carlson's company, Last Nation, Inc. In January 2024, Carlson posted an interview with Florida Surgeon General Joseph Ladapo, M.D., to discuss this idea. Greer notified Carlson's lawyer and demanded a correction, stating in pertinent part, "This interview by Tucker Carlson with Dr. Ladapo is based entirely on my ideas and videos. Please issue a correction. Failure to do so will be willful and malicious violations. [¶] This is the story that started the idea of the Pfizer and Moderna shots being 'gene therapies' that must be removed from the market. Before my story, people were only exposing 'DNA contamination' and not demanding the shots be removed. . . . [¶] . . . [¶] The Epoch Times covered the interview. Ron DeSantis and Dr. Ladapo used it in subsequent

7

comments. Tucker Carlson watched the video last year when I made it."

With respect to each idea alleged in the complaint, Greer stated that he created the idea, he disclosed the idea for sale to Carlson, the use of the idea was clearly conditioned on the obligation to pay, Carlson voluntarily accepted the idea disclosure and used the idea on his show, and the idea had value.

Greer alleged in summary that Carlson is a serial plagiarist whose career is based on repackaging other people's content into a live show, but Carlson does not give credit to the original sources. Greer sought damages of $1 billion.

## C. Demurrer and Trial Court Ruling

In March 2024, Carlson filed a demurrer to the amended complaint. Carlson asserted the New York litigation precluded the California action based on the doctrines of issue and claim preclusion, formerly referred to as res judicata and collateral estoppel, because Carlson was in privity with Fox News. Greer's cause of action for implied-in-fact contract was further barred by the statute of limitations and Greer's failure to allege mutual assent, which was an essential element of an implied-in-fact contract. The cause of action for violation of Business and Professions Code section 17200 failed to state a claim because it was duplicative of the claim for breach of implied-in-fact contract and otherwise preempted under the Copyright Act. In addition, the statute did not support recovery by a non-resident of California, when the alleged misconduct and injuries did not occur in California.

Greer opposed the demurrer. He argued that his claims based on implied-in-fact contracts had not been asserted or litigated previously. In addition, he argued Carlson was not in privity with Fox News. He conceded that the claim under Business and Professions Code section 17200 was derived from the claim for breach of implied-in-fact contract, but asserted that to the extent the claim was based on contract law, it was not preempted by copyright law. He also argued that the continuing violation doctrine brought all of the acts within the statute of limitations.

A hearing was held on November 27, 2024. No reporter's transcript of the hearing has been incorporated in the appellate record. On December 6, 2024, the trial court issued a minute order sustaining the demurrer without leave to amend. The court granted Carlson's request to take judicial notice of 14 court records from the federal action in New York. The court concluded Carlson was in privity with his employer, Fox News, because he had been sued in his capacity as a broadcaster on Fox News. Greer previously alleged claims against Fox News and Carlson for violation of Business and Professions Code section 17200 and breach of an implied-in-fact contract, those claims were adjudicated in favor of Fox News, and the judgment is final. Although Greer had not pled a cause of action explicitly based on implied-in-fact contract in the federal action, he asserted that an implied-in-fact contract existed between him and Fox News, and the federal court concluded Greer had no claim for an implied-in-fact contract. Greer's claims were barred by the doctrines of res judicata and collateral estoppel, as he was clearly attempting to relitigate claims decided against him in the prior federal litigation.

In addition, each cause of action failed to state a claim upon which relief may be granted.  The statute of limitations for an implied-in-fact contract is two years.  The complaint was filed on May 9, 2023, but many of the ideas at issue were sent and aired before May 9, 2021, outside the statute of limitations.  Each tip that Greer alleged Carlson included in a broadcast was an independently actionable wrong, not a continuing violation.  Therefore, many of the implied-in-fact contracts alleged in the complaint were barred by the statute of limitations.

Moreover, Greer failed to state any cause of action for breach of an implied-in-fact contract because he failed to allege any facts showing an agreement by Carlson to compensate Greer for his ideas, nor were there any facts showing mutual asset by Carlson.  Greer simply disseminated his ideas to Carlson and brought this action based on similarities between the purported tips that he sent and the content on Carlson's television show.  This did not show the existence of an implied-in-fact contract.  Carlson's purported use of Greer's ideas, where Greer unilaterally expected compensation, does not show mutual assent because it is not mutual.  The subjective belief of a single party is not mutual assent.  The cause of action for violation of Business and Professions Code section 17200 was duplicative of the contract claim, and otherwise preempted by copyright law.  The court sustained the demurrer without leave to amend.

On January 3, 2025, the trial court entered a judgment of dismissal.  Greer filed a timely notice of appeal.

# DISCUSSION

## A.    Standard of Review

"In determining whether plaintiffs properly stated a claim for relief, our standard of review is clear:  ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed."  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.] . . . '  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see also *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [noting that our review is de novo].)"  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

## B.    Implied-in-Fact Contract

Greer contends that the complaint states a cause of action for implied-in-fact contract under California law.  We disagree.

"An implied contract is one, the existence and terms of which are manifested by conduct."  (Civ. Code, § 1621.)  "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct."  (*Yari v. Producers Guild of America, Inc.* (2008) 161 Cal.App.4th 172, 182.)

11

" 'Even though an idea is not property subject to exclusive ownership, its disclosure may be of substantial benefit to the person to whom it is disclosed.  That disclosure may therefore be consideration for a promise to pay[.]'  [Citations.]" (*Desny v. Wilder* (1956) 46 Cal.2d 715, 733 (*Desny*).)  "Usually the parties will expressly contract for the performance of and payment for such services, but, in the absence of an express contract, when the service is requested and rendered the law does not hesitate to infer or imply a promise to compensate for it.  [Citations.]  In other words[,] the recovery may be based on contract either express or implied.  The person who can and does convey a valuable idea to a producer who commercially solicits the service or who voluntarily accepts it knowing that it is tendered for a price should likewise be entitled to recover." (*Id*. at pp. 733–734.)

Under *Desny*, to prevail on a claim for breach of an implied-in-fact contract for idea submission, "plaintiffs must show (1) they clearly conditioned the submission of their ideas on an obligation to pay for any use of their ideas; (2) the defendants, knowing this condition before the plaintiffs disclosed the ideas, voluntarily accepted the submission of the ideas; and (3) the defendants found the ideas valuable and actually used them— that is, the defendants based their work substantially on the plaintiffs' ideas, rather than on their own ideas or ideas from other sources." (*Spinner v. American Broadcasting Companies, Inc.* (2013) 215 Cal.App.4th 172, 184, emphasis omitted (*Spinner*); *Norman v. Ross* (2024) 101 Cal.App.5th 617, 647–648 (*Norman*).)

A producer's inferred or implied promise to compensate the purveyor of an idea "must be based on circumstances which were known to the producer at and preceding the time of disclosure of

12

the idea to him and he must voluntarily accept the disclosure, knowing the conditions on which it is tendered. Section 1584 of the Civil Code ('[T]he acceptance of the consideration offered with a proposal, is an acceptance of the proposal') can have no application unless the offeree has an opportunity to reject the consideration -- the proffered conveyance of the idea -- before it is conveyed. Unless the offeree has opportunity to reject[,] he cannot be said to accept. [Citations.] The idea man who blurts out his idea without having first made his bargain has no one but himself to blame for the loss of his bargaining power. The law will not in any event, from demands stated subsequent to the unconditioned disclosure of an abstract idea, imply a promise to pay for the idea, for its use, or for its previous disclosure. The law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue." (*Desny*, *supra*, 46 Cal.2d at p. 739.)

The complaint in this case does not state a cause of action for implied-in-fact contract. There is no allegation that Carlson solicited any of the ideas alleged in the complaint as the basis of implied contract claims. Greer, on his own volition, added Carlson's contact information to a mass email list and provided content that Carlson did not request from him. There is no allegation that Greer clearly stated in advance of providing any particular idea that he expected to be paid for use of that idea. There is no allegation that Carlson, knowing this condition for payment before Greer disclosed the ideas, voluntarily accepted the submission of the ideas. (See *Norman*, *supra*, 101 Cal.App.5th at pp. 654–655.) In fact, there is no allegation that

13

Carlson had an opportunity to refuse the ideas offered by Greer before they were offered. The allegations reveal that Greer voluntarily provided content that he considered valuable and then hoped or expected some obligation would ensue. His unilateral expectation of payment or attribution does not satisfy the requirement of mutual assent to a contract.

The circumstances alleged in the complaint further reveal the lack of mutual assent to contract. After providing ideas to Carlson in 2019 and 2020, well outside of the statute of limitations in this case for a claim based on an implied contract, Greer accused Carlson of plagiarism and filed a lawsuit against him in federal court for misappropriation of Greer's ideas. Carlson was clearly not agreeing to pay for the use of Greer's unsolicited ideas. Without any change in their relationship, Greer simply continued to send unsolicited ideas to Carlson. In fact, in his reply brief, Greer admits that he continued to email ideas to Carlson to prove in writing that his work predated Carlson's, because Greer anticipated theft of his ideas. The law will not imply a promise to pay for an idea from demands stated after the unconditioned disclosure of an abstract idea. (*Norman*, *supra*, at p. 655.) The complaint fails to allege Carlson's agreement in advance to pay for Greer's ideas or mutual assent to contract.

Greer concedes that his cause of action for violation of Business and Professions Code section 17200 is derived from his assertion of a contract claim, and as we have explained, Greer has failed to allege a contract claim. On appeal, Greer has not requested leave to amend or suggested how he could successfully amend to state a cause of action. The trial court properly

14

sustained the demurrer without leave to amend and entered judgment in favor of Carlson.

## DISPOSITION

The judgment is affirmed.  Respondent Tucker Carlson is awarded his costs on appeal.
NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


BAKER, Acting P. J.


KIM (D.), J.